UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DUANE FILYAW,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:24-cv-699 (SRU)

**ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Duane Filyaw filed a motion to vacate, set aside, or correct his sentence[1] under 28 U.S.C. § 2255 on account of his counsel's ineffective assistance at various stages of his criminal case. Mot. to Vacate, Set Aside, or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1.  For the following reasons, Filyaw's motion is **denied**.

**I.     Background**

On April 19, 2018, Duane Filyaw was charged in an indictment, along with eighteen co-defendants, with narcotics offenses including conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. § 846.  *See* Indictment, *United States v. Filyaw*, No. 3:18-cr-00081 (SRU) ("Criminal Case"), Doc. No. 1.  On February 13, 2020 I conducted a change of plea hearing at which Filyaw pled guilty, pursuant to a written plea agreement, to Count One of a superseding indictment, which charged conspiracy to possess with intent to distribute and to distribute at least one kilogram of heroin and at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and (ii), and 846.  *See* Plea Agreement, Criminal Case, Doc. No. 953.

---

[1] Although Filyaw's petition expressly attacks his sentence, it is apparent that he claims that the ineffectiveness of his counsel resulted in his agreement to plead guilty. Considering that broader request for relief does not affect the outcome of the motion.

After a series of delays due to COVID-19 and other circumstances, I held a sentencing hearing on June 26, 2023. *See* Minute Entry, Criminal Case, Doc. No. 1513. At sentencing, Filyaw faced a mandatory minimum sentence of ten years' imprisonment under 21 U.S.C. § 841(b)(1)(A). As part of the written plea agreement between the parties, the government had agreed to—and did—recommend at sentencing that I impose a sentence equal to the mandatory minimum. I sentenced Filyaw to ten years' imprisonment, to be followed by a term of supervised release of five years. Minute Entry, Criminal Case, Doc. No. 1513, at 1. Judgment entered on July 12, 2023. Judgment, Criminal Case, Doc. No. 1515. Filyaw did not appeal.

On April 15, 2024 Filyaw filed the instant motion to vacate, set aside, or correct his sentence. Mot. to Vacate, Set Aside, or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1. After extensions of time, the government opposed the motion on October 8, 2024. Mem. in Opp'n Re: Mot. to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 14. Filyaw replied to the government's opposition on December 16, 2024. Reply to Mem. in Opp'n Re: Mot to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 17.

## II.     Legal Standard

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that

results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (internal citations omitted); *Peck v. United States*, 106 F.3d 450, 456 (2d Cir. 1997) (applying *Brecht*'s harmless error standard to a section 2255 petition). Finally, the petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995); *Blackmon v. United States*, 2019 WL 3767511, at *4 (D. Conn. Aug. 9, 2019).

### III. Discussion

Filyaw principally argues that the attorney who represented him for the majority of his criminal case, Jeffrey Kestenband, failed to adequately represent him prior to his entering into a plea agreement, and then again by failing to file a notice of appeal. I will address each argument in turn.

#### A. Filyaw's Claims of Ineffective Assistance Prior to Plea Agreement

To establish that he has been denied his Sixth Amendment right to effective assistance of counsel, a petitioner must show both that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.").

With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo*

*v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). With respect to the prejudice prong, the petitioner must establish that that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

On review, the court "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Further, "[i]n the case of an early plea," courts must avoid "an after-the-fact assessment . . . run[ning] counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." *Premo v. Moore*, 562 U.S. 115, 126 (2011).

A petitioner claiming ineffective assistance bears a heavy burden. "If the attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'" *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)). "[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry*, 409 F.3d at 63 (citing *Strickland*, 466 U.S. at 690-91). Indeed, courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

Filyaw's primary argument is that Attorney Kestenband was "unwilling" and "unprepared" to argue at trial that Filyaw was involved in a buyer-seller arrangement and not a

4

drug conspiracy, "back[ing] [Filyaw] into the corner called 'plea bargain'" to avoid trial. *See* Mot. to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1, at 20-24. As Filyaw accurately points out, "[t]he crux of a conspiracy is an agreement between two or more persons to join together to accomplish something illegal." *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019). In the Second Circuit, the "buyer-seller exception" to the general conspiracy rule provides that the unlawful transfer of drugs from seller to buyer is insufficient to establish a conspiracy. *United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009). However, "the rule does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer." *Id.* (citing *United States v. Wexler*, 522 F.3d 194, 211 (2d Cir. 2008) (Raggi, J., concurring in part and dissenting in part) ("[A]pplication of the buyer-seller rule [is limited] to circumstances where the indictment charges or the proof shows no more than a sale transaction."); *see also United States v. Hawkins,* 547 F.3d 66, 72 (2d Cir. 2008) ("The existence of a buyer-seller relationship does not *itself* establish a conspiracy; however, where there is additional evidence showing an agreement to join together to accomplish an objective beyond the sale transaction, the evidence may support a finding that the parties intentionally participated in a conspiracy.").

The buyer-seller rule protects, for example, "an addicted purchaser who acquired drugs for his own use" from liability for the crimes of his seller. *Parker,* 554 F.3d at 235. It also protects a drug user who gives some of his drugs to a friend "without profit motivation" from liability for any eventual sales the friend makes of those drugs. *Id.* at 236. Here, by contrast, the government was prepared to present at trial very strong evidence that Filyaw was involved in a large and successful drug conspiracy, not merely a buyer-seller arrangement. Any failure or

refusal by Attorney Kestenband to pursue a buyer-seller defense, therefore, did not prejudice Filyaw, despite his (unsupported) claim that he otherwise would have proceeded to trial; nor does it compel me to conclude that Kestenband's representation fell below an objective standard of reasonableness.

Discussing the "prejudice" prong of the *Strickland* test, the Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill*, 474 U.S. at 59. That inquiry depends "in large part on a prediction whether" exculpatory evidence counsel should have discovered or affirmative defense(s) counsel should have pursued "would have changed the outcome of a trial." *Id.* In this case, the evidence against Filyaw very strongly supported a finding that he did more than merely sell illegal drugs to his co-conspirators, but instead was a leader of the conspiracy. For example, Filyaw "obtained substantial quantities" of heroin and cocaine "on a regular basis," "developed a formula for cutting heroin," and maintained a stash house for the drug trafficking organization where he cut, mixed, and packaged crack cocaine and heroin for redistribution. *See* Presentence Investigation Report, Criminal Case, Doc. No. 1243, at ¶ 12. And, beyond just "obtain[ing] bulk quantities of drugs . . . to keep the organization in operation," Filyaw "made arrangements for his organization's drugs to be quality tested . . . to ensure that [his] distributors would have drugs of good quality." *Id.* at ¶ 13.

Though "mere awareness on the part of the seller that the buyer intends to resell the drugs" is not sufficient to support a conspiracy conviction, a seller "running a profit-motivated business of selling drugs in wholesale amounts . . . [who] depends on the ability of the customers to resell" is in a conspiratorial relationship with his buyers because he "share[s] with the buyer

an intention that the buyer succeed in reselling." *Parker*, 554 F.3d at 236. Here, the evidence the government had amassed against Filyaw strongly demonstrated that he took an interest in the success of his buyers' resale efforts, so that his buyers could make a profit and continue to be his customers, supporting a finding of a conspiracy. Based on the totality of the circumstances, therefore, I cannot conclude that Attorney Kestenband's refusal to investigate a buyer-seller defense prejudiced Filyaw. *See Harrington v. Richter,* 562 U.S. 86, 112 (2011) (to demonstrate prejudice, a defendant must show that "the likelihood of a different result [is] substantial, not just conceivable.").

Moreover, Filyaw's argument regarding the buyer-seller defense does not meet the deficiency prong of the *Strickland* test for ineffective assistance, which requires him to prove that his counsel's performance fell outside "the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. As the Court in *Strickland* explained, "when counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id*. at 681 (internal quotations and citation omitted). Given the totality of the circumstances, including the strength of the evidence against Filyaw, Kestenband negotiated a very favorable plea agreement for his client. His alleged refusal to pursue a buyer-seller defense at trial and instead apparently encourage Filyaw to enter into the plea agreement represented a reasonable tactical decision. *Id.* at 689 (explaining that counsel must be afforded "wide latitude" in "making tactical decisions.").

Finally, Filyaw does raise other claims that his two prior defense counsel, Attorneys Cohen and Hayes, who represented him briefly prior to Kestenband's appointment, failed to provide him effective assistance because they failed to conduct any investigation into his case

7

and were biased against him. *See* Mot. to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1, at 12-17. As the government points out, however, those attorneys withdrew from Filyaw's case long before it was resolved, and Kestenband was appointed nearly a year before Filyaw's eventual change of plea. *See* Mem. in Opp'n Re: Mot. to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 14, at 16-17. I therefore conclude that any deficiency in Attorneys Cohen and Hayes' representation of Filyaw was cured by Kestenband's appointment and did not cause Filyaw prejudice.

B. Failure to File a Notice of Appeal

Next, Filyaw argues that Attorney Kestenband failed to provide him effective assistance of counsel because he failed to file a notice of appeal. *See* Mot. to Vacate, Set Aside or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1, at 6-11. He states that he told Kestenband that he wanted to file an appeal based on the buyer-seller defense, and that Kestenband told him that the waiver in his plea agreement prevented him from doing so. *See id*. at 29 ¶¶ 15-17. Attorney Kestenband also submitted a signed affidavit, in which he states that he advised Filyaw immediately after the sentencing hearing that there would be no benefit to appealing his sentence because he had received the mandatory minimum sentence under the statute. *See* Decl., *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 14-2, at ¶ 6. Kestenband states that Filyaw agreed not to appeal and never asked him to file an appeal, and that if Filyaw had done so he would have filed a notice of appeal. *Id*. at ¶¶ 7-9.

As Filyaw accurately points out in his petition, prejudice is presumed under the *Strickland* standard when an attorney ignores their client's express instruction to file a notice of appeal, causing them to forfeit the appellate proceeding entirely. *See* Mot. to Vacate, Set Aside

8

or Correct Sentence, *United States v. Filyaw*, No. 3:24-cr-00699 (SRU), Doc. No. 1, at 8 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). Even assuming that Filyaw told Kestenband to file a notice of appeal, however, the unique facts of Filyaw's case overcome the presumption of prejudice. First, to the extent that Filyaw is moving to vacate his *sentence*, Kestenband's failure to appeal could not have prejudiced Filyaw because Filyaw received the mandatory minimum sentence available under the statute of conviction. *See* 21 U.S.C. § 841(b)(1)(A). Unless his conviction was vacated, an appeal could not possibly have led to a reduction of Filyaw's sentence. To the extent that Filyaw is moving to vacate his *conviction*, the only ground on which Filyaw apparently wanted to appeal was based on the buyer-seller defense. That defense, as described above, very clearly would not apply to Filyaw. The standard for effective assistance of counsel takes into consideration "all of the circumstances, including whether there were nonfrivolous issues to appeal." *Sarroca v. United States*, 250 F.3d 785, 787 (2d Cir. 2001). Filyaw's claim fails to demonstrate that his counsel, by advising him that no appeal could be taken, deprived him of a non-frivolous appeal.

Furthermore, Filyaw waived his right to appeal his both sentence and his conviction by virtue of pleading guilty. His plea agreement explicitly states that, "[i]n consideration for the benefits offered under this agreement, [Filyaw] agrees not to appeal or collaterally attack the sentence in any proceeding . . . if that sentence does not exceed 120 months of imprisonment." Plea Agreement, Criminal Case, Doc. No. 953, at 5-6. The Second Circuit has held that a defendant's knowing and voluntary waiver of the right to collaterally attack his conviction is presumed enforceable. *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam). Filyaw does not allege that his waiver was not knowing and voluntary, or that any other exception to the presumption of enforceability exists. *See Cook v. United States,* 84 F.4th 118,

122 (2d Cir. 2023) (listing the circumstances in which the Second Circuit will not enforce a waiver of the right to appeal).  As a matter of law, Filyaw also did not have the right to appeal his conviction based on a claim of innocence.  Filyaw's buyer-seller defense "could have been made to a jury if [he] had not pleaded guilty," but was "waived, for a defendant who pleads guilty unconditionally," that is, without explicitly preserving the the right to appeal certain pretrial rulings, "admits his guilt and waives his right to appeal all nonjurisdictional contentions."  *United States v. Maher*, 108 F.3d 1513, 1528 (2d Cir. 1997) (citing *Hayle v. United States*, 815 F.2d 879, 881–82 (2d Cir. 1987)).  At his change of plea hearing, I informed Filyaw that a guilty plea would waive his right to appeal his conviction, stating "if you plead guilty, that's going to end the question of your guilt or innocence . . . the law basically says you can't plead guilty and then appeal and say 'I'm not really guilty.'"  Change of Plea Transcript, Criminal Case, Doc. No. 1613, at 11-12.  Filyaw confirmed on the record that he understood before pleading guilty.

   The ordinary remedy afforded to a defendant who successfully makes out a claim that their counsel's ineffectiveness caused them to forfeit an appeal is restoration of their right to appeal.  *See McHale v. United States*, 175 F.3d 115, 119-20 (2d Cir. 1999) (collecting cases).  Here, affording Filyaw the right to appeal either his sentence or his conviction would be futile, because his guilty plea plainly bars any appeal on the grounds he identifies in his petition.  I therefore conclude that any failure of Attorney Kestenband to file a notice of appeal did not prejudice Filyaw, and thus Filyaw fails to satisfy his burden of demonstrating that Attorney Kestenband provided ineffective assistance of counsel in violation of the Sixth Amendment.

    C.  Entitlement to a Hearing

Filyaw requests an evidentiary hearing on his motion to vacate his sentence. *See* Doc. No. 1, at 3. Under section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974) (citations omitted). Absent supporting facts, the court may resolve a petitioner's claims without a hearing. *See id.* at 760-62.

Filyaw fails to satisfy that standard because his petition fails to set forth specific facts entitling him to relief. Therefore, I hold that no hearing is required in this matter.

**IV.  Conclusion**

For the foregoing reasons, Filyaw's motion to vacate, set aside, or correct his sentence, Doc. No. 1, is **denied**.

Because Filyaw has not made a substantial showing that this ruling denies his constitutional rights, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of September.

                                                    /s/ STEFAN R. UNDERHILL
                                                  Stefan R. Underhill
                                                  United States District Judge